UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KENNETH W.,[1] | : | Case No. 3:20-cv-199 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

Plaintiff Kenneth W. brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #14), the Commissioner's Memorandum in Opposition (Doc. #17), Plaintiff's Reply (Doc. #18), and the administrative record (Doc. #11).

**I.    Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

In the present case, Plaintiff applied for benefits on September 28, 2016, alleging disability due to several impairments, including a learning disorder, undiagnosed mental problems, memory problems, bilateral cataracts, and glaucoma.  (Doc. #11, *PageID* #316).   After Plaintiff's applications were denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Gregory G. Kenyon.  Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]  He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since December 8, 2013, the alleged onset date.

Step 2: He has the severe impairments of degenerative arthritis of the right knee; history of cataracts; and borderline intellectual functioning.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except (1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards, such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) no jobs requiring very fine visual acuity, such as that required to handle and assemble very small parts, such as electronic parts; (6) limited to performing unskilled, simple, and repetitive tasks; (7) no fast-paced production work or jobs involving strict production quotas; (8) limited to jobs that involve little, if any, change to the job duties or the work routine from one day to the next; and (9) limited to performing jobs that require no more than third-grade reading skills and fourth-grade math skills."

He is unable to perform any of his past relevant work.

Step 5: He could perform a significant number of jobs that exist in the national economy.

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

(Doc. #11-2, *PageID* #s 51-59).  Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 60.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #11-2, *PageID* #s 51-60), Plaintiff's Statement of Errors (Doc. #14), the Commissioner's Memorandum in Opposition (Doc. #17), and Plaintiff's Reply (Doc. #18).  To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)).  It is "less than a preponderance but more than a scintilla."  *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

   **A.     Listing 12.05B**

In his Statemen of Errors, Plaintiff first contends that ALJ Kenyon erred in finding that his impairments did not meet or equal Listing 12.05B, the listing for intellectual disability. To meet Listing 12.05, an individual's impairment must satisfy the diagnostic description in the introductory paragraph and any of the four sets of criteria. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00.  Here, Plaintiff alleges that he meets the requirements for Listing 12.05B, which provides:

1. Significantly subaverage general intellectual functioning evidenced by a or b:
   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
2. Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:
   a. Understand, remember, or apply information (see 12.00E1); or
   b. Interact with others (see 12.00E2); or
   c. Concentrate, persist, or maintain pace (see 12.00E3); or
   d. Adapt or manage oneself (see 12.00E4); and
3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R., Pt. 404, Subpt. P., App. 1, § 12.05B.

In this case, ALJ Kenyon determined that Plaintiff did not meet the requirements of Listing 12.05B because he did not exhibit sufficiently severe limitations in adaptive functioning. Specifically, he stated:

> [Plaintiff] underwent [Wechsler Adult Intelligence Scale- Fourth Edition (WAIS-IV)] testing at age 50, he is non-compliant with alcohol use, and during high school, [Plaintiff] earned B's and C's in academically challenging classes, such as English, Social Studies, and American Government. [Plaintiff] graduated from high school, despite having an individualized education plan ("IEP"), and subsequently applied for college admission.  The objective record shows that [Plaintiff] has, at most,

4

>moderate limitations. Moreover, [Plaintiff] has been able to perform skilled work and had earnings over $20,000. [Plaintiff] alleged he lives with his brother, but he has no difficulty with personal care. [Plaintiff's] level of adaptive functioning is not indicative of listing level cognitive deficits.

(Doc. #11-2, *PageID* #53) (citations to the record omitted).

Adaptive functioning refers to "how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background" and accounts for "adaptive reasoning in three domains: conceptual, social, and practical." Diagnostic and Statistical Manual of Mental Disorders 37 (5th ed. 2013) ("DSM–V").[3] In order to meet the second paragraph B requirement, Plaintiff must provide evidence of a marked limitation in two, or extreme limitation in one, of the following functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(B)(2). In this regard, the Commissioner contends that the ALJ reasonably found that Plaintiff exhibited, at most, a moderate limitation in all four functional areas, a finding that was supported by evidence of Plaintiff's actual level of functioning and the opinions of the state reviewing psychologists. The undersigned agrees.

ALJ Kenyon found that the second prong of Listing 12.05B was not satisfied because Plaintiff did not manifest extreme limitation of one, or marked limitation of two, areas of mental functioning specified in Listing 12.05B(2). (Doc. #11-2, *PageID* #53).  Instead, ALJ Kenyon found that Plaintiff had only "mild" limitations in his ability to understand, remember, or apply information as well as his ability to adapt and manage himself. *Id.* at 54.  Similarly, he found that

---

[3] "The definition of [intellectual disability] we use in our listing is consistent with, it not identical to, the definitions of [intellectual disability] used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed.Reg. at 20,022; *see Brown v. Sec'y of Health & Human Servs.,* 948 F.2d 268, 270 (6th Cir.1991) (12.05(C) tracks DSM listing for mild intellectual disability).

5

Plaintiff only had "moderate" limitations in his ability to interact with others as well his ability to concentrate, persist, or maintain pace. *Id*.

In finding that Plaintiff only had a "mild" limitation in his ability to understand, remember or apply information, ALJ Kenyon cited to Plaintiff's reports that "he can drive a car, travel alone, shop in stores, and follow written instructions." (Doc. #11-2, *PageID* #54). He also noted Plaintiff's WAIS-IV testing, which showed that Plaintiff had deficits in verbal comprehension and low average processing speed index. *Id*. As noted by the ALJ, Plaintiff, despite having an IEP, graduated from high school and applied for college admission. *Id*. at 56. He also was able to perform work ranging from unskilled to skilled, and he was not fired from any of these positions, indicating that his adaptive functioning was not seriously limited. *Id. See Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 434 (6th Cir. 2016) (the claimant's ability to perform semi-skilled work undercut his claims of adaptive functioning deficits). Further, Plaintiff's treating psychologist and the state reviewing psychologists found that Plaintiff's intellectual deficits would limit him to simple tasks, indicating that his functioning in this area was at least "fair." (Doc. #11-3, *PageID* #121, 149; Doc. #11-7, *PageID* #s 549-50, 558-59).

Next, the ALJ found that Plaintiff was moderately limited in his ability to interact with others. (Doc. #11-2, *PageID* #54). In reaching this conclusion, ALJ Kenyon pointed out that Plaintiff's WAIS-IV testing demonstrated that his nonverbal reasoning skills are more developed than his language-based reasoning skills. *Id*. He also relied on objective notes in the record, which indicate that Plaintiff "is consistently polite and cooperative, and he displays good eye contact." *Id*. Finally, Plaintiff's own statements demonstrated that he had no more than a moderate limitation in his ability to interact with others as he "reported having many friends, he lives with

6

his brother, he gets along well with most family members, and he did not report difficulty getting along well with coworkers or supervisors." *Id*.

The ALJ then found Plaintiff to have a moderate limitation in concentrating, persisting, and maintaining pace. *Id*. Here, ALJ Kenyon acknowledged that the WAIS-IV test revealed that Plaintiff had some concentration and attention deficits, but he also noted that the exams showed that his "ability to decode symbols is a relative strength and he has average delayed memory skills." *Id*. ALJ Kenyon also pointed out that the examiner of the test reported that Plaintiff "did not have significant difficulty completing tasks under time constraints as evidenced by low average processing speed skills." *Id*. ALJ Kenyon also relied on examination findings from Dr. Flexman, who concluded that Plaintiff has no more than moderate limitations in this area. *Id*. (citing Doc. #11-7, *PageID* #s 549-50, 558-59).

Last, ALJ Kenyon found only a mild limitation in Plaintiff's ability to adapt or manage himself. (Doc. #11-2, *PageID* #54). Here, the ALJ recognized that Plaintiff lived with his brother, but noted that "he alleged no difficulty with personal care, and that he can drive, cook, shop, and attend religious services." *Id*. ALJ Kenyon also noted the objective notes in the record also supported only a mild limitation, pointing out that Plaintiff had "good insight" and that his judgment was "sufficient for him to make decisions affecting his future and conduct his own living arrangements." *Id*.

The opinions of the agency reviewing psychologists further support the ALJ's conclusion. Plaintiff's records were reviewed by Katherine Reid, Psy.D, and Paul Tangeman, Ph.D., in December 2016 and February 2017, respectively. (Doc. #11-3, *PageID* #s 116-117, 121-122, 145, 149-150). In reviewing Plaintiff's records, Dr. Reid expressly considered Listing 12.05 and concluded that Plaintiff did not meet the necessary criteria. *Id*. at 116-117. Indeed, in determining

7

Plaintiff's level of functioning, both Drs. Reid and Tangeman concluded that Plaintiff had no more than moderate limitations in the different areas of adaptive functioning. *Id*. at 116-117, 121-122, 145, 149-150). They both opined that Plaintiff had moderate limitations in his ability to understand and remember detailed instructions due to his borderline intellectual functioning but that he retains the ability to perform simple one to three step tasks in a setting that does not require a strict pace or any production demands. *Id*. at 121, 149. They indicated that Plaintiff did not have any social interaction limitations, citing to Plaintiff's documented ability to interact with doctors and examiners. *Id*. at 121, 149-50. However, they found that he had moderate limitations in his ability to appropriately respond to changes in the work setting but clarified that he retained the ability to perform work in a routine work setting where significant changes can be easily explained in advance to allow time for adjustment. *Id*. at 121-122, 150. Finally, both physicians reviewed Plaintiff's June 2016 WAIS-IV testing and found it consistent with a diagnosis of borderline intellectual functioning. *Id*. at 122, 150.

Additionally, while Plaintiff points to Dr. Flexman's findings that Plaintiff "would have difficulty interacting with fellow workers and supervisors on a consistent basis and would have difficulties 'functioning independently[,]'" (Doc. #14, *PageID* #643), Dr. Flexman ultimately concluded that Plaintiff had, at most, moderate limitations in every category of adaptive functioning. (*See* Doc. #11-7, *PageID* #s 549-50, 558-59).

In sum, the ALJ reasonably relied on these assessments in determining that Plaintiff was, at most, moderately, and not markedly, limited in the areas of adaptive functioning for Listing 12.05B. Plaintiff has not directed the Court to any additional evidence that would undermine the ALJ's findings. *See* 20 C.F.R. § 404.1512(a)(A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits). The Court determines that ALJ

Kenyon's decision finding that Plaintiff does not meet or equal Listing 12.05B is supported by substantial evidence. Thus, Plaintiff's first assignment of error is denied.

### B. Medical Opinions

In his next assignment of error, Plaintiff challenges the ALJ's assessment of several medical opinions, including, Regina McKinney, Psy.D., Jerry Flexman, Ph.D., and Damian Danopulos, M.D.. (Doc. #14, *PageID* #s 644-46). The Commissioner maintains that the ALJ's review of the medical opinions and the medical evidence is supported by substantial evidence. (Doc. #17, *PageID* #s 666-70).

Social Security Regulations provide that an ALJ is required to consider every medical opinion in the record and weigh each according to factors like the nature of the relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c)(1)-(6). The Regulations recognize several different types of "acceptable" medical sources: treating physicians, non-treating, yet examining physicians, and non-treating, record-reviewing physicians." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see* 20 C.F.R.§ 404.1502. Generally, a treating doctor's opinion is entitled to more weight, and an ALJ must give good reasons for the weight given a treating doctor's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Gayheart*, 710 F.3d at 376. Indeed, when the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[,]" the ALJ is required to place controlling weight on the treating source's opinion.[4] *See Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 242 (6th Cir. 2007).

---

[4] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017)(to be codified at 20 C.F.R. pts. 404,

Nonetheless, an ALJ may discount a medical source's opinion, including a treating source's opinion, when the source fails to explain or provide objective medical evidence to support his or her opinion or if the source's opinion is inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). In addition, although medical source opinions about what an individual can still do or the individual's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the individual's RFC. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 416.946(c); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

In this case, Plaintiff challenges the ALJ's assessment of agency consultative examiner, Regina K. McKinney, Psy.D. (Doc. #14, *PageID* #s 644-45). At the evaluation, Dr. McKinney described Plaintiff as "a cooperative man with whom rapport was adequately established." (Doc. #11-7, PageID #401). She observed that his "grooming and hygiene were adequate[,]" he displayed appropriate affect with no significant mood disturbances, and good eye contact. *Id*. In addition to interviewing Plaintiff, Dr. McKinney administered the WAIS-IV test, which resulted in a "verbal comprehension index score of 54, a perceptual reasoning index score of 75, and a full-scale IQ of 63, indicating that he is functioning in the extremely low range or at the first percentile for his age group. *Id*. at 404. According to Dr. McKinney, the large discrepancy between Plaintiff's verbal comprehension and perceptional reasoning scores "indicat[ed] that his nonverbal reasoning skills are more developed than his language-based reasoning skills. *Id*. His working memory score was in the "extremely low range or first percentile group" and his processing speed score was in the "low average or about the tenth percentile." *Id*. Dr. McKinney also indicated that

---

416). Since Plaintiff's applications were filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to his claims.

10

while Plaintiff's "verbal abstraction abilities are a relative weakness[,]" his "ability to decode symbols is a relative strength." She noted Plaintiff "did not have difficulty completing tasks under time constraints." *Id*. Based on the testing, which she found reliable, Dr. McKinney diagnosed Plaintiff with borderline intellectual functioning. *Id*. at 406.

Following her examination, Dr. McKinney provided her assessment of Plaintiff's limitations in adaptive functioning. *Id*. With respect to Plaintiff's ability to understand, remember, and carry out instructions, Dr. McKinney pointed out that his test scores suggest that his functioning is in "the extremely low rang of intelligence, although he appears to be of borderline intelligence." *Id*. She also noted that "[h]is nonverbal reasoning skills are more developed than his language-based reasoning skills" and that he had previously been enrolled in special education classes with particular difficulty in reading and writing. *Id*. Despite this, Dr. McKinney also noted that Plaintiff worked steadily until 2005 and did not report difficulty learning job procedures or operating a cash register. *Id*.

With regard to Plaintiff's ability to maintain attention concentration and his ability to maintain persistence, pace, and perform simple to multistep tasks, Dr. McKinney remarked that these skills "were not strong during the evaluation and may deteriorate over extended time periods, slowing performance in completing simple, repetitive tasks." *Id*. Additionally, he had "extremely low" working memory scores on the WAIS-IV testing. *Id.* Nonetheless, she also noted that he did not have difficulty completing tasks under time constraints. *Id*.

In terms of Plaintiff's ability to respond appropriately to supervision and coworkers, Dr. McKinney, did not suggest that he would be very limited. *Id*. at 406-07. Here, she noted that Plaintiff was polite, cooperative, and displayed good eye contact during the examination. He also

11

reported having many friends, getting along with most family members, and did not report difficulty getting along with coworkers or supervisors. *Id*.

Last, Dr. McKinney opined that his cognitive deficits may cause him to have "difficulty reframing adversities in a competitive work environment" and that he "may require excessive support to adjust to new tasks or changes." *Id*. at 407. Otherwise, Dr. McKinney did not observe indications of impulsivity, anger-control difficulty, issues in the legal system, or with substance abuse. *Id*.

In reviewing Dr. McKinney's opinion, ALJ Kenyon recognized that she based her opinions on Plaintiff's low WAIS-IV test scores; however, he found the scores to be "at odds with [Plaintiff's] level of adaptive functioning." (Doc. #11-2, *PageID* #57). As evidence of these inconsistencies, ALJ Kenyon cited to Plaintiff's reports that "he lives with his brother, and he has no difficulty with personal care, and he can drive, cook, shop, and travel alone." *Id*. He also noted Dr. McKinney herself opined that Plaintiff can live independently. *Id*. Accordingly, ALJ Kenyon concluded that Dr. McKinney's opinion could only be afforded "little weight" as it was "somewhat inconsistent with the scores she found valid" and inconsistent with Plaintiff's "actual level of functioning and treatment." *Id*.

The ALJ's explanation for affording Dr. McKinney's opinion "little weight" is clearly articulated and supported by substantial evidence. As noted above, Dr. McKinney primarily based her conclusions on Plaintiff's low WAIS-IV scores, which ALJ Kenyon reasonably determined to be inconsistent with other substantial evidence in the record, including evidence from the other physicians of record and Plaintiff's actual level of functioning. 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Indeed, a review of the record reveals that all of the other

12

physicians who provided opinions on Plaintiff's level of adaptive functioning found him to have, at most, moderate limitations in every category. (*See* Doc. #11-3, *PageID* #s 116-117, 121-122, 145, 149-150; Doc. #11-7, *PageID* #s 549-50, 558-59).

Additionally, Plaintiff's actual level of functioning is inconsistent with such low WAIS-IV scores. For example, ALJ Kenyon pointed out that Plaintiff reported having no difficulty with personal care, could drive, shop, and travel alone, perform basic arithmetic, and manage his own finances. (Doc. 11-2, *PageID* #56). Notably, Dr. McKinney also made findings regarding Plaintiff's level of adaptive functioning that were inconsistent with the WAIS-IV scores, such as the fact that Plaintiff worked on a steady basis until 2005, could live independently, could operate a cash register, had no difficulty learning job procedures, and did not have difficulty completing tasks under time constraints. (Doc. #11-7, *PageID* #406). Thus, the ALJ reasonably found her opinion to be internally inconsistent, as well. *See Driggs v. Comm'r of Soc. Sec.*, No. 2:11-CV-0229, 2011 WL 5999036, at *6 (S.D. Ohio Nov. 29, 2011) (Kemp, M.J.), *report and recommendation adopted,* No. 2:11-CV-0229, 2012 WL 204044 (S.D. Ohio Jan. 24, 2012) (Graham, D.J.) (holding that "an ALJ may reject the opinion of a [medical] source where the [] physician's opinion is inconsistent with [that source's] own medical records.") (internal quotation marks and citation omitted). For these reasons, the undesigned finds no error in the ALJ's review of Dr. McKinney's opinion.

Plaintiff also objects to the ALJ's assessment of his treating source, Jerry E. Flexman, Ph.D. (Doc. #14, *PageID* #s 644-45). Dr. Flexman examined Plaintiff in January 2017 with his brother. (Doc. #11-7, *PageID* #s 468-71). Dr. Flexman observed that Plaintiff was "on time for the evaluation, neatly dressed, and adequately groomed." *Id*. at 469. His posture was relaxed, and he exhibited appropriate body movements. *Id*. Dr. Flexman noted that Plaintiff had decreased

variability in his facial expression and his speech was somewhat slow, though 98 percent intelligible. *Id*. Dr. Flexman affirmed that Plaintiff was "pleasant, and compliant, energy level was good[,] eye contact was fair[,] and "[a]ffect was generally appropriate." *Id*.

As part of the examination, Dr. Flexman also reviewed numerous diagnostic tests, which he interpreted to demonstrate that Plaintiff had normal effort, reliability, and vision; third-grade level reading, word recognition, spelling, math, and reading comprehension; impaired levels of intellectual functioning; some spatial difficulty; memory in the intellectually impaired range; diminished nonverbal conceptualization; Problems of Everyday Living Test within normal range; sustained auditory attention within borderline range; sustained visual attention well within average range; mild drawing dyspraxia and issues interpersonal relationships and mild organic features consistent with intellectual impairment; and some antisocial trends, self-defeating patterns, schizoid, and avoidant personality features. *Id*. at 469-70.

Following the examination, Dr. Flexman diagnosed Plaintiff with "Intellectual Disability Mild" and "Avoidant Personality Traits." *Id*. at 470. He explained that Plaintiff's impaired intellectual disability "would create difficulties for him in functioning independently." *Id*. at 471. Dr. Flexman also opined that, his intellectual disability coupled with his personality disorder traits would cause him "difficulty interacting with fellow workers and supervisors on a consistent basis." *Id*. Additionally, Dr. Flexman provided that plaintiff would "need continued monitoring in terms of his lifestyle as well as finances." *Id*.

A few months later, Dr. Flexman completed a supplemental mental functional capacity assessment of Plaintiff's mental functioning and limitations. (Doc. #11-7, *PageID* #549-50, 558-59). In the assessment, Dr. Flexman was asked to rate Plaintiff's abilities in different areas of adaptive functioning. *Id*. at 549, 558. In response, Dr. Flexman indicated that Plaintiff's abilities

ranged from being "Not Significantly Limited" to "Moderately Limited" in all four categories, including (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaption. *Id*.

Contrary to Plaintiff's contentions, the ALJ reasonably determined that Dr. Flexman's opinion was not entitled to controlling or deferential weight. In reviewing Dr. Flexman's opinion, ALJ Kenyon acknowledged that he was an acceptable treating source but found that he could not give his opinion controlling or deferential weight as his opinion was "not well-supported by the overall objective evidence, and is somewhat inconsistent." (Doc. #11-2, *PageID* #58). In particular, the ALJ found that Dr. Flexman's opinion is "inconsistent with substantial evidence of record, including other physician opinion evidence, and with [Plaintiff's] actual level of functioning. (Doc. #11-2, *PageID* #58). Here, ALJ Kenyon cited to the contrary opinions of the state reviewing psychologists and pointed out that Dr. Flexman appeared to "accept[] the WAIS-IV scores as valid without questioning [Plaintiff's] level of actual functioning or his adaptive functioning." *Id*. Notably, Dr. Flexman's own examination led him to conclude that Plaintiff only had, at most, moderate limitations in all areas of adaptive functioning. (Doc. #11-7, *PageID* #s 549-50, 558-59). As noted previously, ALJ Kenyon concluded that while Plaintiff had moderate limitations in his abilities to interact with others and to adapt and manage himself, he only had mild limitations in his abilities to understand, remember, and apply information and to adapt or manage himself. (Doc. #11-2, *PageID* #54). As these findings are supported by substantial evidence, they also serve to support ALJ Kenyon's conclusion that Dr. Flexman's findings in these latter two areas of functioning are not supported by the record. *See Sprague v. Colvin*, 2015 WL 2066227, at *3 (S.D. Ohio) (Graham, D.J.) ("Where, as here, the ALJ thoroughly addressed such matters as the consultants' reports, the other medical evidence of record, and plaintiff's credibility

15

earlier in his decision, the ALJ was not required to repeat his discussion of those matters again in his discussion of the weight to be assigned to the medical opinions."). With that being said, the ALJ did acknowledge that Dr. Flexman's additional finding that Plaintiff had third-grade reading skills was supported by the record, thereby leading him to incorporate this limitation into Plaintiff's RFC. (*See* Doc. #11-2, *PageID* #s 55, 58).

In short, the undersigned finds no error with the ALJ's finding that Dr. Flexman's other limitations were otherwise unsupported and inconsistent with the record. *See id.*; *see also*, 20 C.F.R. § 404.1527(c)(2) (providing that a treating source opinion will be given controlling weight if and only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record"). Hence, ALJ Kenyon properly declined to afford the opinion controlling weight and articulated good reasons for assigning the opinion only little weight.

Plaintiff also challenged the ALJ's assessment of the consultative examiner, Damian Danopulos, M.D., who provided an opinion on Plaintiff's physical impairments and functioning (Doc. #14, *PageID* #645). On July 5, 2016, Dr. Danopulos evaluated the Plaintiff, who presented with right knee pain and no ambulatory aids. (Doc. #11-7, *PageID* #s 426-29). Plaintiff informed Dr. Danopulos that he has had right knee pain for at least the past five years and was unsure as to why it started. *Id.* at 426. Plaintiff indicated that he has never consulted with a doctor about the pain and that he starts to experience the pain after being on his feet for about two hours, at which point he will take over-the-counter pain medication. *Id.* Upon examination, Dr. Danopulos reported that Plaintiff moved about the room freely, dressed and undressed normally, got on and off the examination table without difficulty, and otherwise had normal movements. *Id.* at 427-28. His "[u]pper and lower extremities revealed full range of motion[,]" including his right knee,

16

though it revealed "painful motions." *Id*. at 428. Plaintiff also reported right knee pain when asked to squat and arise from squatting. *Id*. Otherwise, Dr. Danopulos did not observe any edema, stasis dermatitis, superficial varicose veins. *Id*. An x-ray of Plaintiff's right knee showed "mild to moderate osteoarthritis, most pronounced in the medical compartment with suspected loose bodies." *Id*.

After performing the examination, Dr. Danopulos reported that his objective findings, included (1) Plaintiff's right knee with mild to moderate arthritic changes and (2) being in special education. *Id*. at 429. He then the following statement:

> This 50-year-old male was extremely tall with normal weight. He was walking properly, but its seems that he has some problems only in his right knee, which according to the examination, does not seem to be very important, as he was walking properly. My clinical impression was that he may do any daily activity, if he does not have to walk or st[and] constantly.

*Id*.

In reviewing this report, ALJ Kenyon observed that "Dr. Danopulos did not provide specific limitations but indicated that [Plaintiff] can do any daily activity, but he should not walk or stand 'constantly.'" (Doc. #11-2, *PageID* #58). As a result, the ALJ concluded that these findings were "not inconsistent with the overall objective evidence of record" and afforded his opinion "substantial weight." In response, Plaintiff argues that the ALJ erred in ultimately formulating an RFC comprising of a reduced range of light work. (Doc. #14, *PageID* #645). According to Plaintiff, a limitation of light work is not consistent with Dr. Danopulous' opinion that he cannot constantly walk or stand. *Id*. Plaintiff's argument is without merit.

As noted above, Dr. Danopulos only stated that Plaintiff's could not "constantly" walk or stand. Under the Regulations, a full range of light work includes "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). The relevant Social Security Ruling (SSR) elaborates that "the full range of light work requires standing or walking, *off and on*, for a total of approximately

17

6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) (emphasis added). Notably, neither of these provide that light work involves "constantly" standing or walking. Additionally, as noted by ALJ Kenyon, Dr. Danopulos' examination findings were otherwise normal. As characterized by Dr. Danopulos himself, Plaintiff had "some problems on in his right knee, which according to the examination does not seem to be very important, as he was walking properly." Thus, ALJ Kenyon reasonably interpreted this statement as meaning that Plaintiff could perform light work with limitations. In turn, ALJ formulated an RFC that limited him to the light exertional level with additional limitations. Accordingly, without further explanation regarding Plaintiff's specific level of functioning, ALJ Kenyon appropriately weighed Dr. Danopulos' opinion and incorporated the limitations he reasonably found to be supported by the record into Plaintiff's RFC.

Finally, while it is true that the ALJ's decision must be supported by substantial evidence, it is Plaintiff who "bears the burden of proving the existence and severity of limitations caused by [his] impairments" through step four of the sequential evaluation process. *Jones,* 336 F.3d at 474. Accordingly, it is Plaintiff's burden to prove that he has a more restrictive RFC than that assessed by the ALJ. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999)). Plaintiff, however, does not indicate through citations to the record evidence or through factual or legal analysis what functional limitations caused by his impairments are not already accounted for in the RFC.

Accordingly, the ALJ's failure to impose more restrictive limitations to account for these diagnoses is not unreasonable. *See Kocher v. Comm'r of Soc. Sec.*, No. 2:14-cv-2263, 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015) (Kemp, M.J.), *report and recommendation adopted*, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (Smith, D.J.) (quoting *Burch v. Barnhart*, 400 F.3d

676, 684 (9th Cir. 2005)) ("[W]hen 'there is no evidence in the record, of any functional limitations as a result of [an impairment] that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary."); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."); *Townsend v. Astrue*, No. 6:12-CV-00261-SI, 2013 WL 687042, at *5 (D. Or. Feb. 25, 2013) (failure to discuss a diagnosis is error, but harmless where record does not reveal any limitations due to the diagnosed condition). Based on the foregoing, Plaintiff has failed to meet his burden of proving that his impairments require a more restrictive RFC than that assessed by the ALJ. Thus, Plaintiff's final statement of error is also not well taken.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #14) is **DENIED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the Court's docket.

March 31, 2022                                       *s/Peter B. Silvain, Jr.*
                                                                        Peter B. Silvain, Jr.
                                                                        United States Magistrate Judge